**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANITA KEENE<br>7083 Leesville Road<br>Crestline, Ohio 44827, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| MTD PRODUCTS INC.<br>305 Mansfield Avenue<br>Shelby, Ohio 44875 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>MTD Products Inc.<br>Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, Ohio 43221 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| ASHLE FINLEY<br>305 Mansfield Avenue<br>Shelby, Ohio 44875 | )<br>)<br>) | |
| -and- | )<br>) | |
| MARK SCHEID<br>305 Mansfield Avenue<br>Shelby, Ohio 44875 | )<br>)<br>) | |
| -and- | )<br>) | |
| JENNIFER SWORD<br>305 Mansfield Avenue<br>Shelby, Ohio 44875 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Anita Keene, by and through undersigned counsel, as her Complaint against Defendants MTD Products Inc., Ashle Finley, Mark Scheid, and Jennifer Sword, states and avers the following:

## PARTIES AND VENUE

1. Keene is a resident of the village of Crestline, Crawford County, Ohio.

2. MTD is a foreign corporation that does business at 305 Mansfield Avenue, Shelby, Richland County, Ohio 44875.

3. MTD is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

4. Finley is a resident of the state of Ohio.

5. Scheid is a resident of the state of Ohio.

6. Sword is a resident of the state of Ohio.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Keene is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

8. All material events alleged in this Complaint occurred in Richland County, Ohio.

9. This Court has supplemental jurisdiction over Keene's state law claims pursuant to 28 U.S.C. § 1367 as Keene's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11. Within 300 days of the conduct alleged below, Keene filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-03310 against MTD ("Keene EEOC Charge").

12. Keene dually filed the Keene EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

13. On or about September 16, 2022, the EEOC issued a Notice of Right to Sue letter to Keene regarding the Keene EEOC Charge.

14. Keene received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

15. Keene has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

16. Keene has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

17. Keene has properly exhausted her administrative remedies pursuant to R.C. § 4112.052.

## FACTS

18. On or about November 8, 2021, Keene began working for MTD.

19. MTD employed Keene as an order processor.

20. On or about March 8, 2022, Keene injured her back at work while lifting lawnmower blades from a box ("Injury").

21. On or about March 8, 2022, Keene reported the Injury to Jennifer Sword.

22. Sword was Keene's group leader.

23. On or about March 8, 2022, Keene reported the Injury to Mark Scheid.

24. Scheid was a regional health and safety manager for MTD.

25. On or about March 8, 2022, Keene filled out an incident report to report the Injury to MTD.

26. Keene has scoliosis and degenerative disc disorder in her back ("Keene's Conditions").

27. Keene's Conditions are a physical impairment.

28. Keene's Conditions significantly limit her in one or more major life activities, including lifting, bending, and working.

29. Keene has a record of physical impairment.

30. Because of Keene's Conditions, Defendants perceived Keene as disabled.

31. In Keene's department at MTD, group leads assigned employees to stations as needed.

32. Employees' job duties often varied from day to day, depending on what station they were assigned to.

33. After learning about Keene's Conditions, Sword began giving Keene more strenuous assignments.

34. One of the stations at MTD is known as the "paint line."

35. Working on the paint line involved a significant amount of bending and heavy lifting.

36. The paint line was one of the most physically strenuous stations in Keene's department.

37. On or about March 11, 2022, Sword assigned Keene to the paint line.

38. Keene asked Sword to avoid assigning Keene to the paint line because of her Injury ("First Request for Accommodation").

39. The First Request for Accommodation was reasonable.

40. Defendants could have granted the First Request for Accommodation without undue burden on the company.

41. Defendants denied the First Request for Accommodation ("First Denial").

42. The First Denial was an adverse employment action.

43. Defendants gave Keene the First Denial intentionally.

44. Defendants gave Keene the First Denial willfully.

45. On or about March 18, 2022, Keene's back was hurting while she was lifting a box of parts.

46. On or about March 18, 2022, Keene paused to stretch, in an attempt to alleviate her back pain.

47. On or about March 18, 2022, Sword learned that Keene paused to stretch.

48. On or about March 18, 2022, Sword took Keene to the human resources department to discuss her Injury.

49. On or about March 18, 2022, Keene met with Sword, Scheid, and Ashle Finley ("March 18 Meeting").

50. Finley was human resources manager for MTD.

51. In the March 18 Meeting, Keene requested to be temporarily not assigned to the paint line ("Second Request for Accommodation").

52. The Second Request for Accommodation was reasonable.

53. Defendants could have granted the Second Request for Accommodation without undue burden on the company.

54. Defendants denied the Second Request for Accommodation ("Second Denial").

55. The Second Denial was an adverse employment action.

56. Defendants gave the Second Denial intentionally.

57. Defendants gave the Second Denial willfully.

58. Defendants did not engage in the interactive process to determine whether an alternative accommodation was available.

59. Defendants refused to discuss any accommodations for Keene's Conditions.

60. Finley told Keene that it "would not be fair to everyone else" if Defendants gave Keene an accommodation.

61. On or about March 23, 2022, MTD terminated Keene's employment ("Termination").

62. On or about March 23, 2022, Finley and Scheid told Keene about the Termination ("Termination Meeting").

63. At the Termination Meeting, Finley and Scheid stated that the reason for the Termination was that they were worried Keene would reinjure her back ("Stated Reason").

64. The Stated Reason was not a sufficient basis to justify the Termination.

65. MTD has a progressive disciplinary policy ("Discipline Policy").

66. A verbal warning is the lowest level of discipline in the Discipline Policy.

67. Keene did not receive a verbal warning before the Termination.

68. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

69. Keene did not receive a written warning before the Termination.

70. A termination is the highest level of discipline in the Discipline Policy.

71. MTD knowingly skipped progressive disciplinary steps in terminating Keene.

72. MTD knowingly terminated Keene's employment.

73. MTD knowingly took an adverse employment action against Keene.

74. MTD knowingly took an adverse action against Keene.

75. MTD intentionally skipped progressive disciplinary steps in terminating Keene.

76. MTD intentionally terminated Keene's employment.

77. MTD intentionally took an adverse employment action against Keene.

78. MTD intentionally took an adverse action against Keene.

79. MTD knew that skipping progressive disciplinary steps in terminating Keene would cause Keene harm, including economic harm.

80. MTD knew that terminating Keene would cause Keene harm, including economic harm.

81. MTD willfully skipped progressive disciplinary steps in terminating Keene.

82. MTD willfully terminated Keene's employment.

83. MTD willfully took an adverse employment action against Keene.

84. MTD willfully took an adverse action against Keene.

85. On or about March 23, 2022, Defendants terminated Keene's employment because of her disability.

86. On or about March 23, 2022, Defendants terminated Keene's employment because of her perceived disability.

87. On or about March 23, 2022, Defendants terminated Keene's employment because she requested an accommodation.

88. On or about March 23, 2022, Defendants terminated Keene's employment in order to prevent her from filing for Workers' Compensation.

89. As a direct and proximate result of Defendants' conduct, Keene suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

**(Defendant MTD)**

90. Keene restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. Defendants treated Keene differently than other similarly-situated employees based on her disabling condition.

92. Defendants treated Keene differently than other similarly-situated employees based on her perceived disabling condition.

93. On or about March 23, 2022, Defendants terminated Keene's employment without just cause.

94. Defendants terminated Keene's employment based on her disability.

95. Defendants terminated Keene's employment based on her perceived disability.

96. Defendants violated ADA when it discharged Keene based on her disability.

97. Defendants violated ADA when it discharged Keene based on her perceived disability.

98. Defendants violated ADA by discriminating against Keene based on her disabling condition.

99. MTD violated ADA by discriminating against Keene based on her perceived disabling condition.

100. As a direct and proximate result of Defendants' conduct, Keene suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

**(Defendant MTD)**

101. Keene restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Defendants treated Keene differently than other similarly-situated employees based on her disabling condition.

103. Defendants treated Keene differently than other similarly-situated employees based on her perceived disabling condition.

104. On or about March 23, 2022, Defendants terminated Keene's employment without just cause.

105. Defendants terminated Keene's employment based on her disability.

106. Defendants terminated Keene's employment based on her perceived disability.

107. Defendants violated R.C. § 4112.02 when it discharged Keene based on her disability.

108. Defendants violated R.C. § 4112.02 when it discharged Keene based on her perceived disability.

109. Defendants violated R.C. § 4112.02 by discriminating against Keene based on her disabling condition.

110. MTD violated R.C. § 4112.02 by discriminating against Keene based on her perceived disabling condition.

111. As a direct and proximate result of Defendants' conduct, Keene suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III: FAILURE TO ACCOMMODATE UNDER ADA

### (Defendant MTD)

112. Keene informed Defendants of her disabling condition.

113. Keene requested accommodations from Defendants to assist with her disabilities, including avoiding strenuous tasks.

114. Keene's requested accommodations were reasonable.

115. There was an accommodation available that would have been effective and would have not posed an undue hardship to MTD.

116. Defendants failed to engage in the interactive process of determining whether Keene needed an accommodation.

117. Defendants failed to provide an accommodation.

118. Defendants violated ADA by failing to provide Keene a reasonable accommodation.

119. As a direct and proximate result of Defendants' conduct, Keene suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.01 *et seq.*

### (Defendant MTD)

120. Keene informed Defendants of her disabling condition.

121. Keene requested accommodations from Defendants to assist with her disabilities, including avoiding strenuous tasks.

122. Keene's requested accommodations were reasonable.

123. There was an accommodation available that would have been effective and would have not posed an undue hardship to MTD.

124. Defendants failed to engage in the interactive process of determining whether Keene needed an accommodation.

125. Defendants failed to provide an accommodation.

126. Defendants violated R.C. § 4112.02 by failing to provide Keene a reasonable accommodation.

127. As a direct and proximate result of Defendants' conduct, Keene suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF ADA

### (Defendant MTD)

128. Keene restates each and every prior paragraph of this complaint, as if it were fully restated herein.

129. On or about March 11, 2022, Keene made the First Request for Accommodation.

130. On or about March 18, 2022, Keene made the Second Request for Accommodation.

131. Subsequent to Keene's requesting an accommodation, Defendants terminated Keene's employment.

132. Defendants' actions were retaliatory in nature based on Keene's requesting an accommodation.

133. Pursuant to ADA, it is an unlawful discriminatory practice to retaliate against an employee for requesting a disability accommodation.

134. As a direct and proximate result of Defendants' conduct, Keene suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

### (All Defendants)

135. Keene restates each and every prior paragraph of this complaint, as if it were fully restated herein.

136. On or about March 11, 2022, Keene made the First Request for Accommodation.

137. On or about March 18, 2022, Keene made the Second Request for Accommodation.

138. Subsequent to Keene's requesting an accommodation, Defendants terminated Keene's employment.

139. Defendants' actions were retaliatory in nature based on Keene's requesting an accommodation.

140. Pursuant to R.C. § 4112.01 *et seq.*, it is an unlawful discriminatory practice to retaliate against an employee for requesting a disability accommodation.

## COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (All Defendants)

141. Keene restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

143. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured

11

employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

144. Defendants' termination of Keene jeopardizes these public policies.

145. Defendants' termination of Keene was motivated by conduct related to these public policies.

146. Defendants had no overriding business justification for terminating Keene.

147. As a direct and proximate result of Defendants' conduct, Keene has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VIII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

**(Defendants Scheid, Finley, and Sword)**

148. Keene restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

150. Defendants aided, abetted, incited, coerced, and/or compelled MTD's discriminatory termination of Keene.

151. Defendants aided, abetted, incited, coerced, and/or compelled MTD's discriminatory treatment of Keene.

152. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

153. As a direct and proximate result of Defendants' conduct, Keene has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Keene respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring MTD to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring MTD to restore Keene to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Keene for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Keene claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/Fred M. Bean
Fred M. Bean (0086756)
David E. Byrnes (0086975)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: Fred.Bean@spitzlawfirm.com
       David.Byrnes@spitzlawfirm.com

*Attorneys for Plaintiff Anita Keene*

## JURY DEMAND

Plaintiff Keene demands a trial by jury by the maximum number of jurors permitted.

/s/ Fred M. Bean
Fred M. Bean (0086756)
David E. Byrnes (0086975)